**UNITED STATES COURT OF APPEALS**
**Filed 10/4/96**
**TENTH CIRCUIT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br>v.<br><br>LAWRENCE CHRIS MARRON,<br><br>    Defendant - Appellant. | No. 96-1112<br>(D.C. No. 95-S-3216)<br>(District of Colorado) |

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **KELLY** and **LUCERO**, Circuit Judges.

In May 1994, approximately a year-and-a-half before the Supreme Court decided <u>Bailey v. United States</u>, 116 S. Ct. 501 (1995), Lawrence Chris Marron pleaded guilty to attempted cultivation of marijuana plants, 21 U.S.C. §§ 846, 841, and use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). After negotiating a plea bargain in which he provided the government substantial assistance, Marron was sentenced to three months

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment on the drug count and 60 months on the firearm count. Because of his continuing cooperation, the 60 month firearm sentence was later reduced to 45 months. After the Supreme Court's decision in Bailey, Marron filed a motion under 28 U.S.C. § 2255 to vacate his sentence on the firearms count. The district court denied the motion and Marron appealed. We reverse the district court's judgment and remand for resentencing.

## BACKGROUND

In 1993, Defendant Marron attempted to cultivate more than 50 marijuana plants in a trailer located in Logan County, Colorado. In February 1993, an undercover government informant met with Marron at premises under Marron's control and observed a firearm and growing marijuana plants. In April of the same year, Marron told an undercover ATF agent that he had a firearm "in order to protect the marijuana grow operation because the marijuana plants are valuable and that kind of thing." ROA, Vol. 2, Tr. at 13. The ATF agent, however, never saw a firearm. Id. Finally, in August 1993, a search warrant was executed on Marron's property. Searching officers recovered a firearm as well as a number of marijuana plants. Id. at 14. The criminal charges followed.

At his plea hearing, Marron pleaded guilty to the drug offense but had reservations about pleading guilty to using or carrying a firearm in relation to his drug offense. The district judge recessed overnight. After consulting with his

attorney Marron entered a guilty plea on both counts. The base offense level for the marijuana cultivation was calculated to be 20, USSG § 2D1.1(12), and was reduced by three levels for Marron's acceptance of responsibility, USSG § 3E1.1(b). Based on his specific offender characteristics, the guideline range for Marron's drug offense was 24-30 months. The firearms count required a statutorily mandated sentence of 60 months, running consecutively with his sentence on the drug count.

At Marron's sentencing hearing, the government informed the court that it planned to file a USSG § 5K1.1 motion to reduce the sentence because of Marron's cooperation. The parties' stated goal was to reduce the total minimum sentence of 84 months by 25%, to 63 months. Because the government anticipated administrative difficulties in reducing the § 924(c)(1) count by means of a § 5K1.1 motion, the district court acceded to the prosecution's request that the drug count be reduced to three months, to be served consecutively with the unchanged firearm sentence of 60 months. ROA, Vol. 1, Tab 9 at 2. The government later filed a second § 5K1.1 motion and Marron's sentence was further reduced by 15 months. ROA Vol. 1, Tab 13. At the end of May 1994, Marron began serving his sentence. Id.

Shortly after the Supreme Court decided Bailey in December 1995, Marron filed a motion to vacate his sentence under 28 U.S.C. § 2255. The district court

denied the motion, finding sufficient facts in the record to conclude that Marron "displayed" a firearm to the government informant in February 1993, and "mentioned" his firearm to an ATF agent in April 1993. Based on these facts, the district court concluded that Marron "used" a firearm within the meaning of Bailey, and that a factual basis supported Marron's plea on the firearm count. ROA Vol. 1, Tab 14 at 3-4. Marron timely appealed.

## DISCUSSION

A guilty plea must be vacated if there is no factual basis to accept it. United States v. Keiswetter, 866 F.2d 1301, 1302 (10th Cir. 1989) (en banc); Fed. R. Crim. P. 11(f). The acceptance of a guilty plea is a factual finding that we review for clear error. United States v. Barnhardt, 93 F.3d 706, 710 (10th Cir. 1996). A finding of fact is not erroneous unless it lacks factual support in the record or, after reviewing all the evidence, we are left "with the definite and firm conviction that a mistake has been committed." Exxon Corp. V. Gann, 21 F.3d 1002, 1005 (10th Cir. 1994) (quoting Stegall v. Little Johnson Ass'n, 966 F.2d 1043, 1048 (10th Cir. 1993)).

Marron's firearm conviction under 18 U.S.C. § 924(c)(1) imposes a five year minimum term of imprisonment upon a person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." In Bailey, the Supreme Court held that "use" as articulated in § 924(c)(1) means an

"active employment" of the firearm--or, in other words, "a use that makes the firearm an operative factor in relation to the predicate offense." 116 S. Ct. at 508. This court has recently held that Bailey affected a change in substantive law, and may be applied retroactively to challenge a guilty plea under 28 U.S.C. § 2255. Barnhardt, 93 F.3d at 708-09. The question before us, then, is whether the facts established pursuant to the guilty plea are sufficient to support the conclusion that Marron "used" a gun as defined by Bailey.

The Bailey Court's interpretation of § 924(c)(1) drew in part on a dissent by Judge Williams of the District of Columbia Circuit, in which "[h]e explained his understanding that 'use' under § 924(c)(1) denoted active employment of the firearm 'rather than possession with a contingent intent to use.'" Id. at 505 (quoting United States v. Bailey, 36 F.3d 106, 121 (D.C. Cir. 1994) (en banc) (Williams, J., dissenting)). Active employment includes "brandishing" or "displaying" the weapon. Id. at 508. Likewise, "a reference to the firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" Id. "Even an offender's reference to a firearm in his possession could satisfy § 924(c)(1)." Id. In contrast, merely possessing a firearm within the proximity of drugs to embolden or protect the offender is not an active employment; that the offender intends for a firearm to be used later if necessary

cannot be taken to mean that the firearm is then being actively employed. <u>Id</u>. The broad definition of "use" adopted by some lower courts would entirely subsume the "carry" element of § 924(c)(1). <u>Id</u>. at 507. In <u>Bailey</u> itself, the Court reversed two "use"-based convictions: in the first, the defendant's gun was locked in the trunk of the car he was driving; in the second, the gun was found with drugs and money in a locked trunk in the closet of her apartment. The court remanded the cases to determine whether the defendants violated the "carry" prong. <u>Id</u>. at 509.

In denying Marron's § 2255 motion, the district court did not find any evidence to support a finding that Marron "carried" a firearm in relation to his marijuana cultivation. Rather, the court found that Marron "used" a firearm, that is he "actively employed" it, first by "brandishing" the firearm, and second by "mentioning" it. ROA, Vol. 1. Tab 14 at 3-4. According to the district court, Marron "brandished" the firearm when the government informant observed the weapon on Marron's premises. <u>Id</u>. at 3. While brandishing a firearm certainly is active employment within the meaning of <u>Bailey</u>, there is no evidence in the record to support the district court's finding. "Brandish" does not encompass mere observation, but is defined as "(1) to shake or wave (a weapon) menacingly; (2) to exhibit or expose in an ostentatious, shameless or aggresive manner." <u>Webster's Third New Int'l Dictionary</u> 268 (1961); <u>see also United States v.</u>

Roberts, 898 F.2d 1465, 1469 (10th Cir. 1990) (noting that the Sentencing Guidelines, USSG § 1B1.1, comment. n. 1(c), define "brandish" to mean that "the weapon was pointed or waved about, or displayed in a threatening manner"). No evidence in the record supports the district court's finding that Marron ever brandished a firearm. The record only reflects that the informant "observed" a firearm. Consistent with the term "brandish," Bailey requires some subjective intent by the defendant to make the observer aware of the firearm; there is no evidence in this record that Marron intended the informant to observe the firearm. The finding is clearly erroneous.

We also conclude that Marron did not actively employ a firearm when he told the ATF agent that he had "firearms to protect [his] marijuana grow operation." There is no evidence that Marron had a firearm in his actual or constructive possession when he made the statement, and the ATF agent never observed a firearm during the encounter. While the Court in Bailey noted that "even an offender's reference to a firearm in his possession" could amount to active employment, 116 S. Ct. at 508, it does not follow that a defendant's reference to an inchoate firearm, one admittedly not in his possession, can be "active employment." Marron's statement to the undercover agent cannot fairly be read as calculated to bring about a change in the circumstances of the predicate offense--the attempted cultivation of marijuana plants. The government has

pointed us to no case, and we have been unable to find any, in which the defendant was found to have "used" a firearm within the meaning of § 924(c)(1) by referring to a firearm not in the defendant's possession and not observed by defendant's audience.  Although Bailey downplayed the elements of accessibility and proximity of the firearm, 116 S. Ct. at 508, we do not construe defendant's actual or constructive possession of a firearm to be read out of the offense entirely.   We conclude that Marron's isolated reference to a firearm was not the active employment required by Bailey to satisfy the "use" element of § 924(c)(1).

Finally, the recovery of a firearm in proximity to marijuana plants does not imply that the firearm was used within the meaning given the term by Bailey.  See Id. at 508 ("A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds."); see also United States v. Wacker, 72 F.3d 1453, 1464 (10th Cir. 1995) (reversing § 924(c)(1) convictions in light of Bailey where only evidence of use involved finding guns in camper shell of truck and in a file cabinet in house used in drug dealing).

We conclude that the district court clearly erred when it found a factual basis for Marron's plea on the § 924(c)(1) count, and therefore remand the case with instructions to vacate that portion of Marron's sentence.  It appears from the record, however, that the plea agreement, in which Marron received only three months for the marijuana cultivation count, was premised on the understanding

-8-

that the bulk of Marron's sentence would be attributed to the firearm count. Given the unique circumstances of this case it is appropriate to vacate the entire plea agreement and allow the district court to resentence Marron on the drug cultivation count. Cf. United States v. Hawley, 93 F.3d 682, 692-94 (10th Cir. 1996) (plea agreements governed by contract principles, and enforceability depends on parties' understanding of the bargain). We note also that Marron has served 27 months of his sentence. Given that the top of the guideline range for Marron's adjusted offense level on the drug count was calculated to be 30 months, and that Marron has provided substantial assistance to the government (resulting in two USSG § 5K1.1 motions), it is probable that Marron is entitled to immediate release from custody.

## CONCLUSION

We **REVERSE** the judgment of the district court and **REMAND** the case to the district court with instructions to resentence the defendant expeditiously consistent with this foregoing order and judgment.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

-9-