17 F.3d 1437
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby D. GREEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Lee GORECKI, Defendant-Appellant.
 Nos. 92-4177, 92-4192.
 United States Court of Appeals, Tenth Circuit.
 Feb. 10, 1994.
 
 1
 D.Utah, D.C. Nos. 92-CR-67J, 92-CR-67J.
 
 
 2
 AFFIRMED.
 
 
 3
 Before SEYMOUR and MOORE, Circuit Judges, and BROWN,* District Judge.
 
 
 4
 ORDER AND JUDGMENT**
 
 
 5
 WESLEY E. BROWN, Senior District Judge.
 
 
 6
 Cases Nos. 92-4177 and 92-4192 are consolidated for purposes of appeal. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 7
 Defendants Bobby Green and Ronald Lee Gorecki were convicted by a jury of violating 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 924(c). On appeal they challenge the district court's denial of their motions to suppress evidence. We conclude that the district court properly denied the motions to suppress, and we affirm the judgment of the district court.
 
 
 8
 Standard of Review.
 
 
 9
 In reviewing the denial of a motion to suppress evidence, we must accept the trial court's findings of fact unless they are clearly erroneous. United States v. Pena, 920 F.2d 1509, 1513 (10th Cir.1990), cert. denied, 111 S.Ct. 2802 (1991). The credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge. United States v. Werking, 915 F.2d 1404, 1406 (10th Cir.1990). Accordingly, we review the evidence in a light favorable to the district court's determination. Id. If or where findings are not made, this court must uphold the ruling if there is any reasonable view of the evidence to support it. United States v. Neu, 879 F.2d 805, 807 (10th Cir.1989). The ultimate determination of reasonableness under the Fourth Amendment, on the other hand, is a conclusion of law that we review de novo. Pena, 920 F.2d at 1514. With these standards in mind, we turn to the facts as determined by the district court and as disclosed by the record.
 
 
 10
 Facts.
 
 
 11
 On the night of February 26, 1992, Officer Phillip Terry of the American Fork Police Department was sitting in his marked police car at 100 West and Pacific in American Fork, Utah. As Terry sat in his car, he observed a car coming toward him from the opposite direction. The car stopped briefly at the stop sign opposite Terry and then proceeded to make a left hand turn. As the car was proceeding through the turn, Terry observed the front seat passenger throw a lighted cigarette out of the car window. Terry then activated his overhead lights and stopped the car approximately one block away. After making the stop, Terry approached the driver's side of the car and asked the driver, later identified as defendant Ronald Lee Gorecki, for his license and registration. Gorecki gave Terry his license but stated that he did not have the registration because he had recently bought the car. Terry informed Gorecki that he had stopped the car because he had seen a passenger, later identified as Richard B. Thompson, throw a lighted cigarette out of the car window. Thompson said that he did not remember throwing a cigarette out of the window but indicated that, if he did, he was sorry.
 
 
 12
 While Terry was speaking with Gorecki, he detected the clear odor of alcohol. Terry asked Gorecki if he had been drinking, and Gorecki responded affirmatively but stated that he was not drunk. While Terry was speaking with Gorecki, Terry also saw what appeared to be a gun case under Thompson's feet and what appeared to be a shoulder holster sticking out from under the front seat. Consequently, Terry decided to call Sergeant Samuel Liddiard to the scene as back-up. As Terry was moving away from Gorecki's car to return to his own car to call for back-up, Terry noticed Gorecki hand something to Thompson which Thompson placed under the seat. Terry also noticed defendant Bobby Green, who was the sole occupant of the back seat, put something under some coats that were lying on the seat next to him.
 
 
 13
 After returning to his car, Terry called for back-up and asked the dispatcher to verify Gorecki's ownership of the car. When Sgt. Liddiard arrived, Terry conducted a field sobriety test. Although Gorecki's movements were impaired, he passed the test. Terry then proceeded to write a citation to Gorecki for improper registration, informing Gorecki that his vehicle would probably be impounded. Terry then proceeded to move around the car to give Thompson a citation for throwing a lighted cigarette out of the vehicle. As Terry was making his way around the car, Liddiard informed Terry that Green was moving his hand under the coats sitting next to him on the back seat. Terry then asked Green to lift the coats so that he could see what was underneath them. Green lifted one of the coats. Terry again asked Green to lift the coats, and Green did so, revealing a gun on the seat. At this point Terry yelled "gun!," drew his weapon, and told the defendants to put their hands where he could see them. Officer Terry opened the car door and retrieved the gun, a .22 caliber semi-automatic pistol, from the seat. The pistol had a round of ammunition in the chamber. Terry also saw the butt of a rifle on the floor of the back seat and removed the rifle from the car. The rifle had a clip attached with forty rounds of ammunition in it. The police ordered the three men out of the car. While Liddiard watched the men, Terry searched the interior of the vehicle. Terry found a Glock 9 millimeter semi-automatic pistol with a clip attached and a Colt .357 Magnum under the front seat where Thompson had been sitting. Sergeant Liddiard also subsequently found a .25 caliber semi-automatic pistol on or near the front seat. All three defendants were arrested for having loaded firearms in a vehicle, in violation of Utah Code Ann. Sec. 76-10-505. Terry testified at the suppression hearing that it was department policy to conduct an inventory search of impounded vehicles and to account for any containers or items worth over $25 found in the car. The officers began what they described as an inventory search of the car. In addition to the guns previously mentioned, the officers found some mini-scales, "Zig Zag" papers, and a police scanner. Officer Terry testified that he could smell an odor of marijuana in the car. Because the area where the car was stopped was dark, Terry decided to complete the inventory search at the police station.
 
 
 14
 Gorecki's car was towed to the police station. At the station, the defendants were asked to empty their pockets of all belongings. Green produced a key which Liddiard believed to be a key to the trunk of a Chrysler automobile. In the course of completing the inventory search, Liddiard used this key to open the trunk of Gorecki's car, a Plymouth Reliant. Liddiard immediately detected a strong odor of marijuana and could see several packages containing what appeared to be marijuana inside an open green garbage bag. The officers found a total of 8.9 kilograms of marijuana in the trunk.
 
 
 15
 Discussion.
 
 
 16
 Both appellants contend that the stop of Mr. Gorecki's car was unlawful because it was a "pretext stop." In United States v. Guzman, 864 F.2d 1512, 1515 (10th Cir.1988), we stated that a pretextual stop occurs "when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." We further stated that the test for determining whether an exercise of police power was pretextual was "not whether the officer could validly have made the stop, but whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose." Id. at 1517. The particular officer's subjective intent or secret hopes of finding evidence are not determinative on this question; rather, the focus is upon whether the officer deviated from the usual practice by making such a stop. Id. Applying this standard, we agree with the district court that the stop of Mr. Gorecki's vehicle was not pretextual. Officer Terry observed a passenger throw a lighted cigarette out of Gorecki's car in violation of Utah Code Ann. Sec. 41-6-114, which forbids a person from throwing lighted material from a moving vehicle. A violation of Sec. 41-6-114 is not merely a traffic infraction but is considered a misdemeanor under Utah law. See Utah Code Ann. Sec. 41-6-114.1. The testimony at the suppression hearing indicated that the misdemeanor was committed right in front of Terry--approximately 10-15 feet away. Because it was night, Terry could not see who was in the car. He stopped the car immediately after observing the offense. Officer Terry testified that he did not deviate from the usual police practice in American Fork by making a stop for this type of offense. Tr.Vol. IV at 115. We find nothing in the circumstances that would give rise to an inference that the stop was pretextual. A reasonable officer in these circumstances would have made the stop even absent an invalid purpose.
 
 
 17
 The next argument asserted by appellants is that Officer Terry did not have a reasonable suspicion that justified the continued detention of the defendants after Terry was informed by a dispatcher that Gorecki had recently purchased the automobile. Mr. Gorecki also contends that Officer Terry had no justification for searching under the coats next to Mr. Green. These arguments fail on the facts of the case. Clearly, Officer Terry was aware of specific articulable facts that justified the detention of the defendants while Terry investigated Gorecki's claim that he owned the car. The detention was reasonable in light of the fact that Gorecki had no registration for the car. Terry diligently sought to determine whether Gorecki owned the car by having the dispatcher contact the alleged previous owner. There was evidence that this was accomplished in a relatively short period of time. Also, the defendants' detention was supported by a reasonable suspicion that Gorecki was operating the vehicle under the influence of alcohol. Terry smelled a clear odor of alcohol about Mr. Gorecki and Gorecki admitted that he had been drinking. The findings of the district court show that Officer Terry diligently pursued an investigation to determine whether Gorecki was under the influence. Once Terry had allayed his reasonable concerns about whether or not the car in fact belonged to Mr. Gorecki and about whether or not Gorecki was under the influence of alcohol, Terry proceeded to issue Gorecki a citation for improper registration and one to Thompson for throwing the cigarette. Nothing in the record supports the appellants' contention that they were unreasonably detained prior to the issuance of these citations. Moreover, when Terry went to issue the citation to Thompson, he was aware of specific facts that justified the order to Green to lift the coats from the back seat. Terry had already observed a gun case and gun holster on the floor of the car and had seen Thompson put something under the front seat and Green put something under the coats on the back seat. As Terry approached the car to give Thompson a citation, Liddiard cautioned him that Green was moving his hand under the coats on the back seat. These specific and articulable facts were sufficient to reasonably warrant an officer's believing that the defendants may have been dangerous and may have been armed. See Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Terry's directive to Green to lift the coats was a reasonable measure to determine whether a weapon was present and to neutralize the threat of physical harm. Id. Once Terry observed the firearm on the seat, he was justified in seizing the weapon and in searching the passenger compartment of the car. Id. The presence of the loaded weapons in the car, discovered by the officer in the course of this search, provided probable cause to arrest the defendants for a violation of Utah Code Ann. Sec. 76-10-506 and permitted the officer to conduct a further search of the passenger compartment. See also New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (As a contemporaneous incident of arrest, police may search passenger compartment of vehicle.)
 
 
 18
 Appellant Green raises an argument that impounding Mr. Gorecki's automobile was a subterfuge to conduct a warrantless search under the guise of an inventory search. We need not address the merits of this argument, however, because we agree with the district court that Mr. Green lacks standing to object to either the seizure of the car or the ensuing search. Fourth Amendment rights are personal and may not be asserted vicariously. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Under the circumstances, Mr. Green--a nonowner passenger without any possessory interest in the car who disclaimed any interest in the contents of the car or the trunk--had no legitimate expectation of privacy that would give him standing to contest the search. See Rakas, supra; United States v. Martinez, 983 F.2d 968, 972-74 (10th Cir.1992); United States v. Jefferson, 925 F.2d 1242, 1251 (10th Cir.), cert. denied, 112 S.Ct. 238 (1991).
 
 
 19
 Mr. Green also argues that Officer Terry's initial request for Mr. Gorecki to produce his license and registration was itself an unlawful detention because the offense for which the car was stopped had been committed by Thompson, a passenger in the car. We reject this argument. The offense at issue in this case, while not a traffic infraction committed by the driver, was by definition capable of being committed only in a moving vehicle. See Utah Code Ann. Sec. 41-6-114. It was committed right next to Mr. Gorecki in the vehicle. Even if Officer Terry was aware that the driver of the vehicle did not throw the cigarette out of the window, under the principles of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officer was aware of specific facts that justified a brief investigative detention of Mr. Gorecki to determine his identity; whether he was the owner and entitled to operate the car; and whether he was involved in or knew anything about the offense.
 
 
 20
 In addition to the arguments made by his counsel, Mr. Gorecki filed a pro se brief in this case. While the arguments in that brief are not set forth in a coherent fashion, we are able to discern from it that Mr. Gorecki believes there was insufficient evidence to support his conviction. We have reviewed the record of the proceedings in the district court, including the transcript of the trial, and we conclude that the evidence presented was sufficient to support the convictions. Mr. Gorecki also appears to argue that the district court erroneously increased his offense level under the sentencing guidelines based upon a finding that he was a manager of the criminal activity in this case. Mr. Gorecki failed to make any such objection in the district court, however, and that failure constitutes a waiver of the issue on appeal. See United States v. O'Dell, 965 F.2d 937, 938 (10th Cir.1992); United States v. Saucedo, 950 F.2d 1508, 1518 (10th Cir.1991).
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3